IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LATU,<br><br>    Plaintiff,<br><br>    v.<br><br>R. McFADDEN, et al.,<br><br>    Defendants. | No.  2:20-CV-01518-WBS-DMC-P<br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's second amended complaint, ECF No. 30.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).

In order to survive dismissal for failure to state a claim, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555-56 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). The mere possibility of misconduct will not suffice to meet this standard. See id. at 679. Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants that support the claims, vague and conclusory allegations fail to satisfy this standard.

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff names as Defendants: (1) S. Jackson, Prison Counselor at Mule Creek State Prison; (2) B. Holmes, Chief Deputy Warden at Mule Creek State Prison; and (3) N. Costa, Captain at Mule Creek State Prison. See ECF No. 30, pgs. 2-3. Generally, Plaintiff alleges violations of the Eighth Amendment relating to Defendants' deliberate indifference to Plaintiff's safety concerns, Due Process under the Fourteenth Amendment, and Equal Protection under the Fourteenth Amendment. See id., pg. 5.

Plaintiff states that he has been housed in protective custody (sensitive needs yard "SNY") since 2005 because he is a sex offender but, as a result of a 2019 memorandum, which details the prison's goals regarding designation of inmates at certain facilities, it was determined that Plaintiff would be transferred to a non-designated facility (general population). See ECF No.

///

///

///

1  30, pgs. 4, 11, 17.[1]   At his classification hearing, Plaintiff was classified with a placement score

2  of zero, but his offender status mandates a minimum placement score of 19. Such score is

3  consistent with a level 2 placement.[2]  See id., pg. 11.  Based on this score, Plaintiff was referred

4  for a "non-adverse" transfer to a non-designated facility and was advised that "all inmates in the

5  program are expected to safely intermingle [regardless] of prior . . . classifications." Id., pg. 17.

6         Plaintiff contends all named Defendants are aware of Plaintiff's conviction offense

7  and each had a hand in changing his placement status from protective custody to a non-designated

8  facility, despite Plaintiff's objection that such placement would constitute a safety risk.  See id.,

9  pgs. 4, 5, 7-9.  Plaintiff alleges that "prison staff are intentionally placing all SNY inmates on

10  'ND Yards'," and that all level 1 and 2 inmates, but not level 3 or level 4 inmates, are being

11  "forced into this housing."  Id.  Plaintiff contends Defendants' transfer of Plaintiff to a non-

12  designated facility constitutes deliberate indifference.  See id.

13         Defendant Jackson is Plaintiff's correctional counselor, and, Plaintiff asserts, it is

14  his duty to review his prison file and place "Plaintiff's security needs first."  Id., pg. 5.  When

15  Plaintiff told Defendant Jackson that he was not signing off on his transfer, Defendant Jackson

16  stated "'it is not voluntary, and if you get assaulted, we will move that person to a higher security

17  prison.'"  Id., pg. 6.

18  / / /

19  / / /

20  / / /

21

---

[1]  Plaintiff attaches to his complaint copies of the classification committee chrono and various documents pertaining to the appeal of his grievance and the classification hearing decision, which detail the events on which Plaintiff bases his allegations.  The Court takes judicial notice of both documents because each is a document upon which the complaint necessarily relies.  See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

[2]  A classification hearing is the process by which the California Department of Corrections and Rehabilitation determines an inmate's placement within a facility as well as eligibility for transfer between facilities. See Cal. Code Regs. tit. 15, § 3375.  A classification score reflects the security control needs of an inmate, where higher scores correspond to greater needs.  See id. at § 3375(d).  Zero is the minimum classification score. See id. at § 3375.1(a). Prisoner classification decisions take into account an "inmate's needs, interests, and desires," but are ultimately based on a combination of factors, including the institution's "security missions and public safety." Id. at § 3375(a).

3

1    Plaintiff claims that Defendant Costa is a captain and is in charge of all
2 committees on facility C, where Plaintiff is currently housed. See id., pg. 7. Defendant Costa
3 purportedly is briefed every day regarding prison safety and "alone has the authority to override
4 the plaintiff and keep him [there] as Plaintiff's security and housing needs require." Id. Plaintiff
5 claims Defendant Costa is the deciding factor and was directly involved in reviewing and
6 agreeing on Plaintiff's transfer to a non-designated facility. See id., pg. 8.
7    Defendant Holmes is the Chief Deputy Warden at Mule Creek Prison and "has the
8 last word on who gets transferred and who does not." Id., pg. 8. Plaintiff filed a grievance stating
9 his fear and safety concerns over the transfer to a non-designated facility, which he contends was
10 disregarded. Id. In response to Plaintiff's grievance, Defendant Holmes allegedly stated that it
11 was policy and all level 2 inmates will transfer, "despite any of the dangers raised in plaintiff's
12 grievance." Id. Plaintiff contends, as Warden, Defendant Holmes had the absolute authority to
13 allow Plaintiff to stay in protective custody and not transfer to a non-designated facility. See id.
14    Plaintiff seeks declaratory relief, damages, and a temporary restraining order or
15 preliminary injunction preventing Plaintiff's transfer to a non-designated facility. See id., pg. 3.

## II. DISCUSSION

The Court finds Plaintiff's claims to be defective, as discussed below.

### A.   Eighth Amendment Claims for Personal Safety

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) abrogated in part on other grounds by Sandin v. Connor, 515

U.S. 472 (1995).

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982), abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Plaintiff fails to allege sufficient facts to substantiate a claim here. Plaintiff alleges that it was indifferent of Defendants to place him in a non-designated facility because of the potential for assault based on Plaintiff's sex offender status. First, Plaintiff's allegations regarding his safety are speculative. While Plaintiff alleges a hypothetical danger of being a sex offender housed in a non-designated facility and resulting violence against him, he has not alleged facts to show that his commitment offense is known in the general population such that a safety risk would arise from such a placement. Plaintiff asserts only that since Defendants have begun integrating inmates into non-designated facilities that "numerous people have been stabbed, beaten to a pulp, or been subjected to all sorts of prison riots." ECF No. 30, pg. 4. However, Plaintiff does not allege those inmates who were subjected to violence were all classified as sex offenders, such that Plaintiff could expect to be exposed to a similar substantial risk of serious harm. Plaintiff's prediction is insufficient to establish that he faces a substantial risk of serious

1 | harm.

2 |       Second, Plaintiff's allegations that Defendants have knowledge of a substantial risk to Plaintiff's safety are conclusory and unsupported. Plaintiff alleges that "[e]very inmate upon entering a new facility will show other inmates their paperwork" and that "[a]ll staff from correctional officers to wardens are aware of this long time requirement." Id., pg. 5. Plaintiff asks this Court to conclude that because other inmates will be shown Plaintiff's paperwork, Defendants have knowledge of a substantial risk to Plaintiff's safety. However, Plaintiff fails to provide any facts to substantiate that nexus. Moreover, Plaintiff has not provided Defendants any information that would put them on notice that Plaintiff is at risk of serious harm by being transferred to a non-designated facility. See ECF No. 30, pg. 11 (noting Plaintiff "has not specified any threat or allegations of 'mortal or serious injury'" to warrant protective custody).

      Third, Plaintiff fails to provide facts that, in light of any purported knowledge, Defendants disregarded the risk to his safety. Plaintiff asserts otherwise. Plaintiff was told that if he "becomes aware of specific threats to [his] safety, [he] is advised to immediately notify staff," as well as "if you get assaulted, we will move that person to a higher security prison." Id., pgs. 6, 11. Thus, Defendants' have not disregarded a risk of serious harm to Plaintiff, but instead, have provided an avenue in which to address such risk if and when circumstances warrant. Plaintiff's speculation about his safety and Defendants' knowledge is insufficient to state a claim for failure to protect under the Eighth Amendment.

    **B.**    **Due Process**

      The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

///

///

///

///

### 1. Property and liberty interests

Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id. To have a property interest in a benefit, a person "clearly must have more than an abstract need or desire for it . . . . [The person] must, instead, have a legitimate claim of entitlement to it." Id.

An inmate's liberty interests are protected under certain circumstances. Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. The Constitution itself provides no liberty interest in remaining in the general population, see Sandin, 515 U.S. at 485-86; in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); or in staying at a particular institution, see Meachum, 427 U.S. at 225-27. Generally speaking, changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (no constitutional right to a particular classification)); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (determining California regulations governing security classification of prisoners and subsequent prison placement did not give rise to a protected liberty interest).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin, 515 U.S. at 481-84. In doing so, the Court held that state law creates a liberty interest deserving of protection only where the deprivation in question:

7

(1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.  Otherwise, federal courts should afford appropriate deference and flexibility to state officials managing a volatile prison environment.  See Sandin, 515 U.S. at 482 (citing Wolff, 418 U.S. at 561-63).

        Here, Plaintiff has neither a property nor liberty interest deserving of protection and thus his Due Process claim must fail.  Plaintiff claims that based on his classification as a sexual offender, he should remain in protective custody instead of transferring to a non-designated facility because his "security and housing needs" require him to remain housed there.  See ECF No. 30, pgs. 4, 7.  Plaintiff cannot, and does not, state any facts that would confer any property interest in remaining in protective custody.  Because Plaintiff alleges only predictions and conclusory statements about his safety in a non-designated facility, protective custody is merely a benefit that Plaintiff currently enjoys and desires for the future; he is not entitled to a certain classification or protected status.

        Plaintiff also does not have a liberty interest that is being deprived by his transfer to a non-designated facility.  Plaintiff must allege, specifically, how the conditions in the non-designated facility will confine his freedoms in a manner not normally expected from his incarceration.  Plaintiff has stated only that conditions in the non-designated facility are generally threatening and dangerous.  Plaintiff alleges a hypothetical danger of being a sex offender housed in a non-designated facility and possible resulting violence against him; but has not alleged facts to show how having his commitment offense known in the general population with the potential of violence, restrains his liberty.  In order to survive dismissal, Plaintiff must allege specific facts to show how the conditions in the non-designated facility pose an overt threat to Plaintiff that will restrict his freedom in a manner not contemplated by his incarceration.

        Next, Plaintiff must allege facts sufficient to show that conditions in the non-designated facility will impose an atypical and significant hardship on him, different than the ordinary occurrences of prison life.  Plaintiff asserts that "numerous people have been stabbed, beaten to a pulp, or been subjected to all sorts of prison riots" in the non-designated facility, and

argues his safety will be put at risk when he is "required to show" his paperwork that indicates he is a sex offender. See ECF No. 30, pg. 4. However, Plaintiff does not allege that those subjected to violence in the non-designated facility were all sex offenders, like Plaintiff. Plaintiff alleges, generally, that such a placement would have the potential to create an unsafe living environment for Plaintiff, but does not point to anything inherent in a non-designated facility that could be construed as an "atypical or significant hardship" outside ordinary prison life. It is likely that most, if not all, inmates have safety concerns. The mere possibility that such a placement has the potential to create an unsafe living environment for Plaintiff is insufficient. In order to survive dismissal, Plaintiff must allege specific facts, not conclusory statements, which detail how the conditions in the non-designated facility are inevitably threatening and dangerous to Plaintiff, above and beyond those conditions ordinarily found within prison life. Plaintiff must plead facts showing how such danger is a credible threat to Plaintiff, not just a mere possibility. As a result, Plaintiff's freedoms are not being restrained in a manner not expected from his incarceration, and transfer to a non-designated facility does not impose a significant hardship, atypical of the ordinary incidents of prison life.

Because, at this time, Plaintiff does not have a property or liberty interest in remaining in protective custody, Plaintiff cannot state a claim for deprivation of due process. Plaintiff will be provided one final opportunity to amend his complaint to include facts sufficient to support a claim for violation of due process based on a deprivation of his liberty interests.

2.  Grievances

To the extent Plaintiff is attempting to allege a due process claim for the denial of his grievances, inmates lack a liberty interest in the processing of an inmate appeal because there is no "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). A prison official's denial of an inmate appeal does not qualify as a constitutional violation. See id. Plaintiff challenges the decision to transfer him to a non-designated facility and claims that each Defendant could have prevented his transfer by making a different decision either during the committee hearing or afterwards by overruling the committee decision. See ECF

9

No. 30, pgs. 5, 8; see also id., pgs. 10, 17-18 (showing Defendants are signatories on grievance response and classification committee chrono). To the extent Plaintiff seeks relief against any Defendant for deciding his grievances or administrative appeals in a particular way concerning his placement in the non-designated facility, Plaintiff lacks a liberty interest in this regard. Defendants' denials of Plaintiff's grievances and appeals do not amount to a constitutional violation and thus Plaintiff fails to state a claim.

### C. **Equal Protection**

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1 (1972). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Thus, in order to invoke the protection of the Equal Protection Clause a plaintiff must first establish that he is a member of a protected class. See Furnace v. Sulivan, 705 F.3d 1021, 1030 (9th Cir. 2013).

Neither inmates nor sex offenders, in and of themselves, are a protected class. See United States v. Juvenile Male, 670 F.3d 999, 1009 (9th Cir. 2012); United States v. LeMay, 260 F.3d 1018, 1030 (9th Cir. 2001). Being an inmate, or an inmate with a certain arrest history, is not a suspect class. See also Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (affirming district court's dismissal of inmate's Equal Protection Clause claim because "'inmates convicted of violating certain [state penal codes] do[] not constitute a protected class, and California had a rational basis for promulgating the regulation at issue").

To the extent Plaintiff's allegations concern being discriminated against on account of being an inmate convicted of a sexual offense requiring protective custody, his Equal Protection Clause claim must fail. Plaintiff alleges no facts to indicate that Defendants intentionally discriminated against him based on any protected status in deciding whether to transfer him to non-designated facility. According to Plaintiff, all level 1 and 2 inmates, but not

level 3 or level 4 inmates, are being "forced into this housing." ECF No. 30, pg. 5, 17 ("All level I and Level II institutions are in process of transitioning to" to non-designated facilities.). The fact that all similarly situated inmates—those with Level II classifications—are being transferred to non-designated facilities contradicts any argument that he is being treated differently than others with his same classification. Those inmates with Level III or IV classifications, requiring higher security and greater restrictions, are not similarly situated to Plaintiff. See id., pg. 5. There are no facts to substantiate any suggestion of discriminatory intent by Defendants.

Further, Plaintiff alleges that, as a sex offender, he is a "protected class of prisoner"; he is not. Being a sex offender does not constitute a class requiring heightened protection under the Fourteenth Amendment. Thus, because Plaintiff is not in a protected class and cannot show that he is being treated dissimilarly than other Level II inmates who are being transferred to non-designated facilities, Plaintiff is unable to state a claim under the Equal Protection Clause.

### III. CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how

each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, Plaintiff is not entitled to leave to amend as to such claims.  Plaintiff, therefore, now has the following choices: (1) Plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the Court will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the Court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's second amended complaint is dismissed with leave to amend; and

2. Plaintiff shall file a third amended complaint within 30 days of the date of service of this order.

Dated:  December 29, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

12