1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    SAMUEL LATU,                              No.  2:20-CV-1518-WBS-DMC-P

12              Plaintiff,

13        v.                                    <u>FINDINGS AND RECOMMENDATIONS</u>

14    B. HOLMES, et al.,

15              Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Defendants' unopposed motion for summary

19    judgment.  <u>See</u> ECF No. 51.

20            The Federal Rules of Civil Procedure provide for summary judgment or summary

21    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

22    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

23    the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

24    standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

25    56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

26    the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>See</u>

27    / / /

28    / / /

                                              1

1    Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

2    moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

7         If the moving party meets its initial responsibility, the burden then shifts to the

8    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10   establish the existence of this factual dispute, the opposing party may not rely upon the

11   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12   form of affidavits, and/or admissible discovery material, in support of its contention that the

13   dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

14   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

15   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

16   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

17   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

18   return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

19   (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

20   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

22   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

23   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

24   of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

25        In resolving the summary judgment motion, the court examines the pleadings,

26   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

27   See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

28   477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

2

1    court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

2    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

3    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

4    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

5    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

6    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

7    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

8    imposed." Anderson, 477 U.S. at 251.

9

10                               **I.  PLAINTIFF'S ALLEGATIONS**

11            This action currently proceeds on Plaintiff's third amended complaint.  See ECF

12    No. 33.  Plaintiff names the following as defendants: (1) S. Jackson, Correctional Counselor at

13    Mule Creek State Prison (MCSP); (2) N. Costa, Facility Captain at MCSP; and (3) B. Holmes,

14    Chief Deputy Warden at MCSP. See id. at 2.

15            Plaintiff states that he is a convicted sex offender.  See id. at 15.  When first

16    incarcerated, Plaintiff was placed into the Sensitive Need Yard (SNY).  See id. at 7-9.  After the

17    California Department of Corrections and Rehabilitation (CDCR) changed its housing policy,

18    Plaintiff was moved into a general population yard.  Id. at 6-8.  Plaintiff claims that laws have

19    recently changed that would have protected him from being placed into general population.  Id. at

20    6.  But because Plaintiff was deemed appropriate for transfer before the new laws were codified,

21    Plaintiff was still going to be transferred.  Id.

22            Plaintiff objected to the transfer and filed a grievance explaining his concerns that

23    he would be assaulted if sent to a general population yard.  See id. at 7.  Plaintiff verbally

24    explained to each defendant why he needed to remain on the SNY.  Id.  Plaintiff claims that, after

25    being moved into a general population yard, he was assaulted several times.  Id. at 8.  One

26    assailant wielded a weapon that caused an injury requiring seventeen stiches.  Id.  According to

27    Plaintiff, the CDCR plans to move him to a new general population facility.  Id. at 6.  Plaintiff has

28    objected, citing his fears that he will be inevitably assaulted if transferred.  Id.  at 10.  Plaintiff

1    believes under current CDCR policy he belongs at a SNY facility.  Id. at 10-12.

2

3                            **II.  DEFENDANTS' EVIDENCE**

4            Defendants' unopposed motion for summary judgment is supported by: (1) a

5    separate statement of undisputed facts, ECF No. 51-2; (2) the declaration of defense counsel Jiaye

6    Zhou, Esq., ECF No. 51-4; (3) the declaration of MCSP Litigation Coordinator D. Santos, ECF

7    No. 51-5; and (4) the declarations of the named defendants, ECF Nos. 51-6, 51-7, and 51-8.

8            According to Defendants, the following relevant facts are not in dispute:

9            3.    Plaintiff has been an inmate at MCSP since 2006.  See ECF
10    No. 33 (third amended complaint).

                              * * *
11

12            49.    Plaintiff has been endorsed to a Level II NDPF [Non-
     Designated Programming Facility] since 2019.  See Plaintiff's deposition,
13    54:11-17.

                              * * *
14

15            51-53.  On July 1, 2020, Plaintiff appeared for his annual
     classification and placement review and was re-endorsed for NDPF
16    placement.  See Costa Declaration, ¶ 6; Jackson Declaration, ¶ 15.

17            54.    Plaintiff objected to the placement due to his crimes.  See
     Jackson Declaration, ¶ 15.

18
             55.    Before endorsing the placement, the classification
19    committee cleared enemy concerns.  See Costa Declaration, ¶ 6; Jackson
     Declaration, ¶ 14.

20                            * * *

21            59.    The July 2020 classification committee included
     Defendants Jackson and Costa, neither of whom believed that Plaintiff's
22    fears were substantiated.  See Costa Declaration, ¶ 8; Jackson Declaration,
     ¶ 14.
23
                              * * *
24

25            62.    Three weeks following his placement, Plaintiff filed a
     grievance challenging the classification committee's endorsement to a
26    NDPF yard.  See Holmes Declaration, ¶ 12; Jackson Declaration, ¶ 15.

27            63.    In this grievance, Plaintiff stated: "Against the known
     dangers to my personal safety and well-being, the CDCR is forcing me to
     integrate with mainline prisoners and calling them 'non-designated.'  This
28    is a farce, as the CDCR knows all too well the immediate dangers of

                                    4

1    housing mainline inmates with sensitive needs inmates."  See Holmes
2    Declaration, ¶ 12.

                                    * * *

3
        67.    Defendant Holmes denied Plaintiff's grievance, assigned
4    Log No. 20094, on August 21, 2020.  See Holmes Declaration, ¶ 12.

5        68.    Defendant Holmes had no other involvement in the case
6    other than to deny Plaintiff's grievance.  See Holmes Declaration, ¶ 12.

                                    * * *
7
        71.    Plaintiff's appeal of Defendants Holmes' denial was denied
8    by the Office of Appeal at the headquarters level of review on November
9    11, 2020.  See Holmes Declaration, ¶ 16.

                                    * * *
10
        73.    Plaintiff initiated this lawsuit on July 29, 2020.  See ECF
11    No. 1.

12    ECF No. 51-2.

13

14                          **III.  DISCUSSION**

15        In their unopposed motion for summary judgment, Defendants argue that summary

16    judgment is appropriate because: (1) Plaintiff failed to exhaust administrative remedies as to

17    Defendant Holmes prior to filing suit; and (2) Plaintiff cannot establish the necessary elements to

18    support his safety claim under the Eighth Amendment.  See ECF No. 51-1, pg. 2.

19    **A.    Exhaustion**

20        Prisoners seeking relief under § 1983 must exhaust all available administrative

21    remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

22    regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

23    Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

24    the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

25    while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

26    Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and

27    held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

28    because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

                                        5

1   defendants; (2) an individual named as a defendant does not necessarily need to be named in the

2   grievance process for exhaustion to be considered adequate because the applicable procedural

3   rules that a prisoner must follow are defined by the particular grievance process, not by the

4   PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

5   all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

6   instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

7   burden of showing that the grievance process was not available, for example because it was

8   thwarted, prolonged, or inadequate.  See id.

9          The Supreme Court held in Woodford v. Ngo that, in order to exhaust

10  administrative remedies, the prisoner must comply with all of the prison system's procedural

11  rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

12  exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

13  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

14  which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

15  at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

16  quantity of prisoner suits "because some prisoners are successful in the administrative process,

17  and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

18  When reviewing exhaustion under California prison regulations which have since been amended,

19  the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

20  adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557

21  F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

22  (reviewing exhaustion under prior California regulations).

23         Exhaustion is defined by the prison, not the PLRA. See Reyes v. Smith, 810 F.3d

24  654, 657 (9th Cir. 2016) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)).  Under the CDCR

25  regulations in place at the time, an inmate grievance was required to describe all information

26  know to the inmate, including key dates, times, names, and titles of officers alleged to be

27  involved.  See California Code of Regulations, Title 15, § 3482(c)(2).

28  / / /

6

1     Defendants argue that Plaintiff has failed to exhaust his administrative remedies as

2   to Defendant Holmes because Defendant Holmes was not listed in Plaintiff's grievance filed

3   following his July 2020 classification to a NDPF yard.  See ECF No. 51-1, pgs. 13-15.

4   According to Defendants:

5           Plaintiff alleges that CDW Holmes "had the power to override the
        committee decision or action and he has not stepped to the plate." (Latu
6       Depo 110:6-11.) To comply with the exhaustion requirement and put
        CDW Holmes on notice, Plaintiff must file and exhaust a second
7       grievance, alleging that CDW Holmes's decision to deny Plaintiff's
        underlying grievance was unconstitutional or otherwise violated a law or
8       policy. However, Plaintiff failed to do so. (Latu Depo 77:18-78:3.) He
        conceded that he only filed one grievance regarding the committee's
9       decision to endorse him to an NDPF facility, which did not concern CDW
        Holmes's subsequent decision to deny his initial grievance. (Id.)
10      Therefore, Plaintiff failed to lay the groundwork for litigation against
        CDW Holmes. (See Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010),
11      stating that to provide adequate notice, an inmate must "provide the level
        of detail required by the prison's regulations.")
12
        ECF No. 15-1, pg. 15.
13

14          At issue is the sufficiency of Plaintiff's grievance, Log No. 20094, filed on July

15  22, 2020.  This document, the institutional response denying the grievance, Plaintiff's appeal, and

16  Defendant Holmes' denial of Plaintiff's appeal are attached as Exhibits 1-4 to the Holmes

17  declaration.  See ECF No. 15-7, pgs. 7-20.  In his grievance, Plaintiff claimed that his

18  classification to a NDPF yard posed dangers to his personal safety and well-being.  See ECF No.

19  15-7, pg. 8.  Plaintiff does not explain in the grievance why he believed his safety was at risk due

20  to classification to a NDPF yard.  See id. at 8-9.  Attached to this grievance is the "Classification

21  Committee Chrono" approving Plaintiff's placement on a NDPF yard.  See id. at 10-12.  The

22  chrono was signed by Defendants Jackson and Costa.  See id. at 11.  Plaintiff's grievance was

23  denied by Defendant Holmes on August 21, 2020.  See id. at 14.  Plaintiff appealed Defendant

24  Holmes' denial on August 25, 2020.  See id. at 16-18.  Defendant Holmes denied Plaintiff's

25  appeal on November 11, 2020.  See id. at 19-20.

26  / / /

27  / / /

28  / / /

7

1        The Court finds that the evidence presented satisfies Defendants' initial burden on

2    summary judgment of identifying the absence of a genuine dispute of material fact as to

3    Plaintiff's exhaustion of administrative remedies concerning his claim against Defendant Holmes.

4    Specially, as Defendants assert, Plaintiff's grievances did not name Defendant Holmes as

5    responsible for his July 2020 classification to a NDPF yard.  Nor does Plaintiff's appeal allege

6    Defendant Holmes' responsibility.  At best, Plaintiff's assertion against Defendant Holmes arises

7    from his handling of Plaintiff's grievance, which is not actionable.  See Mann v. Adams, 855 F.2d

8    639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding

9    that there is no liberty interest entitling inmates to a specific grievance process); see also Smith v.

10   Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances

11   did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996)

12   (concluding that prison officials' failure to properly process and address grievances does not

13   support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995)

14   (dismissing complaint without leave to amend because failure to process a grievance did not

15   implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994)

16   (concluding that prisoner's claim that grievance process failed to function properly failed to state

17   a claim under § 1983).

18       Plaintiff has not filed any opposition or otherwise responded to Defendants'

19   motion.  The Court thus concludes that Plaintiff has not met his burden on summary judgment of

20   pointing to evidence which would create a genuine dispute as to whether Plaintiff exhausted his

21   administrative remedies as to Defendant Holmes.  The Court will recommend that summary

22   judgment be granted in favor of Defendant Holmes based on failure to exhaust.

23       **B.    Eighth Amendment**

24       The treatment a prisoner receives in prison and the conditions under which the

25   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

26   and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

27   511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

28   of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

8

1    (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

2    Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

3    "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

4    801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

5    two requirements are met: (1) objectively, the official's act or omission must be so serious such

6    that it results in the denial of the minimal civilized measure of life's necessities; and (2)

7    subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

8    inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

9    official must have a "sufficiently culpable mind."  See id.

10          Under these principles, prison officials have a duty to take reasonable steps to

11    protect inmates from safety risks.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982);

12    Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively,

13    the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and

14    (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.

15    The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v.

16    Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence

17    is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The

18    knowledge element does not require that the plaintiff prove that prison officials know for a

19    certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion

20    of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must

21    show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a

22    substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if

23    harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

24          Defendants argue that Plaintiff cannot show that, objectively, his placement on a

25    NDPF yard posed a substantial risk to his safety.  See ECF No. 15-1, pgs. 17-20.  More

26    specifically, based on Plaintiff's deposition testimony, Defendants contends that Plaintiff's safety

27    concerns as expressed at the July 2020 classification committee were merely speculative.  See id.

28    / / /

9

1    According to Defendants:

2        More specific to Plaintiff, each year, the classification committee
3    cleared Plaintiff of enemy concerns before suggesting a transfer to a non-
     designated yard. (DSUF 55, 88.) Counselor Jackson confirmed through
     Plaintiff's Strategic Offender Management System (SOMS) files that
4    Plaintiff had no enemy living in the yards where the committee suggested.
     (*Id.*) Even Plaintiff himself could not identify a known enemy. (Latu Depo
5    86:24-87:17.) During his deposition, Plaintiff could not name any of his
     enemies living in the non-designated yard at MCSP, where Plaintiff would
6    be housed. (*Id.*) Instead, Plaintiff testified, "[a]nyone could be [his]
     enemies." (*Id.*)

7

8        Q. Okay. Mr. Latu, is it your belief that if you move to a non-
     designated yard, you will 100 percent get assaulted?

9        A. (Indiscernible).

10       Q. I'm sorry, I didn't –

11       A. That's correct.

12       Q. Can you tell me why? Do you have any enemies at Mule Creek?

13       A. Anyone can be my enemies. I have enemies. I didn't mention
     them. My – my perpetrator that victimized me, and they are -- they are
14   buddies, they are homies, they go. If I show up, that's -- there's no help. I
     have nowhere to go.

15
         Q. Are your enemies currently in the designated yard?
16
         A. I have no knowledge.
17
     (*Id.*)
18
     ECF No. 51-1, pgs. 17-18.
19

20       The Court agrees with Defendants that the undisputed evidence shows that

21   Plaintiff's safety concerns resulting from placement on a NDPF yard are speculative at best.

22   Plaintiff was unable to articulate any specific safety concern at the July 2020 classification

23   committee meeting, nor was he able to do so at his deposition.  While Plaintiff's sex offender

24   commitment offense could result in a safety risk, such risk would only arise when other inmates

25   are aware of the commitment offense.  Here, Plaintiff has provided no evidence to suggest that

26   inmates on the general population knew that Plaintiff had been convicted of a sex offense.

27   / / /

28   / / /

1         The Court finds that Defendants have met their initial burden on summary

2   judgment of identifying the non-existence of a genuine dispute of material fact as to the objective

3   component of Plaintiff's Eighth Amendment safety claim.  Plaintiff has not filed an opposition or

4   otherwise responded with evidence to suggest that, objectively, his placement on a NDPF yard

5   could result in a risk to his safety.  As such, the Court will recommend granting Defendants'

6   motion for summary judgment in favor of all defendants on the merits of Plaintiff's Eighth

7   Amendment claim.

8

9                        **IV.  CONCLUSION**

10        Based on the foregoing, the undersigned recommends that Defendants' unopposed

11  motion for summary judgment, ECF No. 51, be granted.

12        These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

14  after being served with these findings and recommendations, any party may file written objections

15  with the Court.  Responses to objections shall be filed within 14 days after service of objections.

16  Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v.</u>

17  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18

19  Dated:  September 17, 2025

20                                 DENNIS M. COTA

21                                 UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

11